**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **JENNY OLMSTEAD,**<br>on behalf of herself and all others similarly<br>situated,<br><br>       Plaintiff,<br><br>v.<br><br>**90 DEGREE BENEFITS – WISCONSIN<br>(F/K/A EBSO, INC.) AND 90 DEGREE<br>BENEFITS, LLC,**<br><br>       Defendants. | Case No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

  Plaintiff Jenny Olmstead, ("Plaintiff"), individually and on behalf of all similarly situated persons, alleges the following against 90 Degree Benefits – Wisconsin, f/k/a EBSO, Inc., and 90 Degree Benefits, LLC (collectively, "90 Degree Benefits" or "Defendants") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

### I.  INTRODUCTION

  1.  Plaintiff brings this class action against 90 Degree Benefits for its failure to properly secure and safeguard Plaintiff's and other similarly situated 90 Degree Benefits consumers' names, addresses, dates of birth, Social Security numbers, medical and health information, and information related to the payment of healthcare services (the "Private Information") from hackers.

2.      90 Degree Benefits is a health benefits company that serves more than 560,000 members nationwide, providing them with personal health plans and administering benefits for employers' health and operational needs.[1]

3.      On or about April 7, 2023, 90 Degree Benefits sent a "Notice of Data Security Incident" (the "Notice") to individuals whose information was compromised as a result of the incident.

4.      Based on the Notice, 90 Degree Benefits detected unusual activity on some of its computer systems on December 10, 2022. Its investigation revealed that an unauthorized party had access to certain company files between December 5, 2022, and December 11, 2022 (the "Data Breach"). In response, the company is "providing access to complimentary credit monitoring services for 12 months [and] guidance on how to better protect against identity theft and fraud." Yet, 90 Degree Benefits waited almost four (4) months to notify victims that they were at risk.

5.      As a result of this delayed response, Plaintiff and "Class Members" (defined below) had no idea for almost four (4) months that their Private Information had been compromised and was in the possession of cybercriminals. Plaintiff continue to be at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

6.      The Private Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves, including but not limited to, names, addresses, dates of birth, Social Security numbers, medical and health information, and information related to the payment of healthcare services that 90 Degree Benefits collected and maintained.

---

[1] *See* https://90degreebenefits.com/about.php (last visited May 1, 2023).

7.    Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

8.    There has been no assurance offered by 90 Degree Benefits that all personal data or copies of data have been recovered or destroyed, or that Defendants have adequately enhanced their data security practices sufficient to avoid a similar breach of their network in the future. In fact, this is not the first time Defendants have fallen victim to a data breach resulting from inadequate data security measures. Less than a year earlier, in February 2022, Defendants experienced a similar but different data breach.[2] Accordingly, Defendants were on direct notice of the need to implement advanced data security protections but clearly failed to do so.

9.    Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

10.    Plaintiff brings this class action lawsuit to address 90 Degree Benefits' inadequate safeguarding of Class Members' Private Information that it collected and maintained, and its failure to provide timely and adequate notice to Plaintiff and Class Members of the types of

---

[2] *See* https://oag.ca.gov/system/files/90%20Degree%20Benefits%20-%20Sample%20Notice.pdf (last visited on May 1, 2023).

3

information that were accessed, and that such information was subject to unauthorized access by cybercriminals.

11.     The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to 90 Degree Benefits, and thus 90 Degree Benefits was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

12.     Upon information and belief, 90 Degree Benefits failed to properly monitor and implement adequate data security practices with regard to the computer network and systems that housed the Private Information. Had 90 Degree Benefits properly monitored its networks, it would have discovered the Breach sooner.

13.     Plaintiff's and Class Members' identities are now at risk because of 90 Degree Benefits' negligent conduct as the Private Information that 90 Degree Benefits collected and maintained is now in the hands of data thieves and other unauthorized third-parties.

14.     Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

15.     Accordingly, Plaintiff, on behalf of herself and the Class, asserts claims for negligence, negligence *per se*, breach of contract, breach of implied contract, unjust enrichment, invasion of privacy, and declaratory and injunctive relief.

## II.     PARTIES

16.     Plaintiff Jenny Olmstead, is, and at all times mentioned herein was, an individual citizen of the State of Indiana.

17.     Defendant 90 Degree Benefits Wisconsin, formerly known as EBSO, Inc., has its principal place of business at 7020 N. Port Washington Road, Suite 206, Milwaukee, Wisconsin,

4

53217-3800. Upon information and belief, in or about December 2018, EBSO, Inc. merged with 90 Degree Benefits, LLC. 90 Degree Benefits Wisconsin is a regional office of 90 Degree Benefits, LLC.

18.     Defendant 90 Degree Benefits, LLC is an Alabama limited liability company with its principal place of business in Birmingham, Alabama at 450 Riverchase Parkway, East Birmingham, Alabama 35244. 90 Degree Benefits, LLC offers information technology services and, according to its website, has 24 offices serving 525,000 members nationwide.

### III.     JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from 90 Degree Benefits. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.     This Court has jurisdiction over Defendants because they operate in and/or are incorporated in this District.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to this action occurred in this District and Defendants conduct substantial business in this District.

22.     All of Plaintiff's and Class Members' claims stated herein are asserted against Defendants and any of their owners, predecessors, successors, subsidiaries, agents and/or assigns. As the corporate relationship between the two Defendants and other possible defendants is not fully known, Plaintiff and Class Members reserve the right to amend the complaint should the facts and the evidence necessitate it.

## IV.    FACTUAL ALLEGATIONS

**A. 90 Degree Benefits' Business and Collection of Plaintiff's and Class Members' Private Information**

23.     90 Degree Benefits is a health benefits company working with various members to create health benefits packages for their employees. Founded in 1977, 90 Degree Benefits has 24 offices and serves more than 525,000 members nationwide.[3] 90 Degree Benefits employs more than 170 people and generates approximately $158 million in annual revenue.

24.     As a condition of receiving health insurance services, 90 Degree Benefits requires that its customers entrust it with highly sensitive personal information. In the ordinary course of receiving these services from 90 Degree Benefits, Plaintiff and Class Members were required to provide their Private Information to Defendant.

25.     In its privacy statement (the "Privacy Policy"), 90 Degree Benefits promises its customers that it will not share this Private Information with third parties. Specifically, it states that it "in no way will make specific and individually identifiable information given to us available without your specific consent."[4]

26.     Defendants also promise in the HIPAA Privacy Notice of 90 Degree Benefits (the "HIPAA Privacy Notice") that Plaintiff's and Class Members' medical information would only be disclosed for the following purposes: healthcare providers' treatment purposes, payment, healthcare operations, health services, as required by law, to business associates, and to a plan

---

[3] *See* https://90degreebenefits.com/about.php (last visited on May 1, 2023).

[4] *See* https://90degreebenefits.com/privacy.php (last visited on May 1, 2023).

6

sponsor.[5] Further, Defendants promise they "will not use or disclose your medical information for any other purposes unless you give us your written authorization to do so."[6]

27.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, 90 Degree Benefits assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

28.     Plaintiff and Class Members relied on 90 Degree Benefits to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information, which Defendants ultimately failed to do.

**B.   The Data Breach and 90 Degree Benefits' Inadequate Notice to Plaintiff and Class Members**

29.     According to Defendants' Notice, it learned of unauthorized access to its computer systems on December 10, 2022, with such unauthorized access having taken place between December 5, 2022, and December 11, 2022

30.     Through the Data Breach, the unauthorized cybercriminal(s) accessed a cache of highly sensitive personal and medical information, including names, addresses, dates of birth, Social Security numbers, medical and health information, and information related to the payment of healthcare services.

31.     On or about April 7, 2023, almost 4 months after 90 Degree Benefits learned that the Class's Private Information was first accessed by cybercriminals, 90 Degree Benefits finally began to notify those most at risk – Plaintiff and Class Members – that its investigation determined that their Private Information was "accessed without authorization." However, the notice sent by

---

[5] *See* https://90degreebenefits.com/docs/90DegreeBenefits_PRIVACY_NOTICE.pdf (last visited on May 2, 2023).

[6] *Id.*

7

90 Degree Benefits merely notified Plaintiff and the Class Members about "[t]he information [that] may have" been exfiltrated. This vague statement leaves Plaintiff and the Class Members uncertain about exactly what important bits of their information are now in the hands of cybercriminals.

32.     The notice letter then attached a page entitled "Steps You Can Take to Help Protect Your Personal Information" which listed generic steps that victims of data security incidents can take, such as getting a copy of a credit report, putting a security freeze on credit files, or notifying law enforcement about suspicious financial account activity. Other than providing only a year of complimentary credit monitoring that Plaintiff and Class Members would have to affirmatively sign up for and a call center number that victims could contact with questions, 90 Degree Benefits offered no other substantive steps to help victims like Plaintiff and Class Members to protect themselves. On information and belief, 90 Degree Benefits sent a similar generic letter to all individuals affected by the Data Breach.

33.     90 Degree Benefits had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

34.     Plaintiff and Class Members provided their Private Information to 90 Degree Benefits with the reasonable expectation and mutual understanding that 90 Degree Benefits would comply with its obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

35.     90 Degree Benefits' data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

8

36. 90 Degree Benefits knew or should have known that its electronic records would be targeted by cybercriminals.

C. **90 Degree Benefits Failed to Comply with HIPAA**

37. Title II of HIPAA contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI similar to the data Defendant left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

38. 90 Degree Benefits' Data Breach resulted from a combination of insufficiencies that indicate its failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from Defendants' Data Breach that they either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiff's and Class Members' PHI.

39. Plaintiff's and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

40. 45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

41. 45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

42. Plaintiff's and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

9

43.     Plaintiff's and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

44.     Based upon Defendants' Notice to Plaintiff and Class Members, 90 Degree Benefits reasonably believes that Plaintiff's and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

45.     Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

46.     90 Degree Benefits reasonably believes that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

47.     Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

48.     Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

49.     90 Degree Benefits reasonably believes that Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a mnner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

50. It is reasonable to infer that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

51. It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

52. After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for recipients of that notice, including Plaintiff and Class Members in this case, to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

53. In addition, 90 Degree Benefits' Data Breach could have been prevented if Defendants had implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its customers.

54. 90 Degree Benfits' data security failures also include, but are not limited to:

    a. Failing to maintain an adequate data security system to prevent data loss;

    b. Failing to mitigate the risks of a data breach and loss of data;

    c. Failing to ensure the confidentiality and integrity of electronic protected health information Defendants create, receive, maintain, and transmit, in violation of 45 CFR 164.306(a)(1);

d.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.  Failing to identify and respond to suspected or known security incidents;

g.  Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.  Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and

k.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

55.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414 also required Defendants to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*" (emphasis added).

56.     Because Defendants have failed to comply with HIPAA, while monetary relief may cure some of Plaintiffs' and Class Members' injuries, injunctive relief is also necessary to ensure Defendants' approach to information security is adequate and appropriate going forward. Defendants still maintain the PHI and other highly sensitive PII of its current and former customers, including Plaintiff and Class Members. Without the supervision of the Court through injunctive relief, Plaintiff's and Class Members' Private Information remains at risk of subsequent data breaches.

### D.  **90 Degree Benefits Failed to Comply with FTC Guidelines**

57.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decisionmaking. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

58.     In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection

13

system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

59.     The FTC further recommends that companies not maintain personally identifiable information ("PII") longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

60.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

61.     As evidenced by the Data Breach, 90 Degree Benefits failed to properly implement basic data security practices. 90 Degree Benefits' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

62.     90 Degree Benefits was at all times fully aware of its obligation to protect the Private Information of its customers yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from their failure to do so.

E. **90 Degree Benefits Failed to Comply with Industry Standards**

63.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

14

64.     Some industry best practices that should be implemented by businesses like 90 Degree Benefits include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

65.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

66.     Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

67.     Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**F.  90 Degree Benefits Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information**

68.     In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing,

safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. 90 Degree Benefits owed a duty to Plaintiff and Class Members to provide reasonable security, including complying with industry standards and requirements, training for its staff, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

69.     90 Degree Benefits breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. 90 Degree Benefits' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.   Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b.   Failing to adequately protect customers' Private Information;

c.   Failing to properly monitor its own data security systems for existing intrusions;

d.   Failing to sufficiently train its employees regarding the proper handling of its customers Private Information;

e.   Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f.   Failing to adhere to industry standards for cybersecurity as discussed above; and

g.   Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

70.     90 Degree Benefits negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

16

71.     Had 90 Degree Benefits remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

72.     Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with 90 Degree Benefits.

## G.  90 Degree Benefits Should Have Known that Cybercriminals Target PII and PHI to Carry Out Fraud and Identity Theft

73.     The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[7] Exposure of  highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

74.     Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity

---

[7] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on May 1, 2023).

thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

75. PII is data that can be used to detect a specific individual. PII is a valuable property right. Its value is axiomatic, considering the value of big data in corporate America and the consequences of cyber thefts (which include heavy prison sentences). Even this obvious risk-to-reward analysis illustrates beyond doubt that PII has considerable market value.

76. The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[8] The increase in cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendants' industry, including Defendants, who had already experienced a recent breach.

77. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web and that the "*fullz*" (a term criminals who steal credit card information use to refer to a complete set of information on a fraud victim) sold for $30 in 2017.[10]

---

[8] *See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, U.S. Dep't of Justice, Feb. 10, 2020, available at https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-fourmembers-china-s-military (last visited on May 1, 2023).

[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited on May 1, 2023).

[10] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited on May 1, 2023).

78.      Furthermore, even information such as names, email addresses and phone numbers, can have value to a hacker.  Beyond things like spamming customers, or launching phishing attacks using their names and emails, hackers, *inter alia*, can combine this information with other hacked data to build a more complete picture of an individual.  It is often this type of piecing together of a puzzle that allows hackers to successfully do phishing attacks or social engineering attacks.  This is reflected in recent reports, which warn that "[e]mail addresses are extremely valuable to threat actors who use them as part of their threat campaigns to compromise accounts and send phishing emails."[11]

79.      The Dark Web Price Index of 2022, published by PrivacyAffairs[12] shows how valuable just email addresses alone can be, even when not associated with a financial account:

| Email Database Dumps | Avg. Price USD (2022) |
| --- | --- |
| 10,000,000 USA email addresses | $120 |
| 600,000 New Zealand email addresses | $110 |
| 2,400,000 million Canada email addresses | $100 |

80.      Beyond using email addresses for hacking, the sale of a batch of illegally obtained email addresses can lead to increased spam emails.  If an email address is swamped with spam, that address may become cumbersome or impossible to use, making it less valuable to its owner.

81.      Likewise, the value of PII is increasingly evident in our digital economy.  Many companies including 90 Degree Benefits collect PII for purposes of data analytics and marketing.

---

[11] *See* https://www.magicspam.com/blog/dark-web-price-index-the-cost-of-email-data/ (last visited on May 1, 2023).

[12] *See* https://www.privacyaffairs.com/dark-web-price-index-2022/ (last visited on May 1, 2023).

19

These companies, collect it to better target customers, and shares it with third parties for similar purposes.[13]

82.     One author has noted: "Due, in part, to the use of PII in marketing decisions, commentators are conceptualizing PII as a commodity. Individual data points have concrete value, which can be traded on what is becoming a burgeoning market for PII."[14]

83.     Consumers also recognize the value of their personal information, and offer it in exchange for goods and services. The value of PII can be derived not only by a price at which consumers or hackers actually seek to sell it, but rather in the economic benefit consumers derive from being able to use it and control the use of it.

84.     A consumer's ability to use their PII is encumbered when their identity or credit profile is infected by misuse or fraud. For example, a consumer with false or conflicting information on their credit report may be denied credit. Also, a consumer may be unable to open an electronic account where their email address is already associated with another user.  In this sense, among others, the theft of PII in the Data Breach led to a diminution in value of the PII.

85.     Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiff's PII impairs their ability to participate in the economic marketplace.

---

[13] *See* https://robinhood.com/us/en/support/articles/privacy-policy/ (last visited on May 1, 2023).

[14] *See* John T. Soma, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ('PII') Equals the "Value" of Financial Assets,* 15 Rich. J. L. & Tech. 11, 14 (2009).

20

86.     A study by the Identity Theft Resource Center[15] shows the multitude of harms caused by fraudulent use of PII:



87.     PHI is also especially valuable to identity thieves.  As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[16]

88.     Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

89.     While credit card information and associated PII can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[17]

---

[15] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited May 1, 2023).

[16] Federal Trade Commission, *Warning Signs of Identity Theft, available at*: https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited on May 2, 2023).

[17] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at*: https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited on May 2, 2023).

90.     PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

91.     Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[18]

92.     The ramifications of Defendants' failure to keep their customers' Private Information secure are long lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

93.     Here, not only was sensitive medical information compromised, but Social Security numbers were compromised too. The value of both PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

94.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information

---

[18] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, *available at*: https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited on May 2, 2023).

is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[19]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

95. PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

96. As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

## H. Plaintiff's and Class Members' Damages

97. Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

98. Plaintiff and Class Members entrusted their Private Information to Defendants in order to receive Defendants' services.

99. Plaintiff's Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendants' inadequate data security practices.

100. As a direct and proximate result of 90 Degree Benefits' actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing

---

[19] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited May 1, 2023).

increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

101.    Further, as a direct and proximate result of 90 Degree Benefits' conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

102.    Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

103.    The Private Information maintained by and stolen from Defendants' systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

104.    Additionally, Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their accounts and records for misuse.

105.    Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

   a.    Monitoring for and discovering fraudulent charges;

   b.    Canceling and reissuing credit and debit cards;

   c.    Purchasing credit monitoring and identity theft prevention;

   d.    Placing "freezes" and "alerts" with credit reporting agencies;

24

e. Spending time on the phone with or at a financial institution to dispute fraudulent charges;

f. Contacting financial institutions and closing or modifying financial accounts;

g. Resolving claims for unauthorized medical services received in their names; and

h. Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

106. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of 90 Degree Benefits, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

107. As a direct and proximate result of 90 Degree Benefits' actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V. CLASS ACTION ALLEGATIONS

108. Plaintiff brings this action individually and on behalf of all other persons similar situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

109. Specifically, Plaintiff proposes the following Nationwide Class (also referred to herein as the "Class"), subject to amendment as appropriate:

**Nationwide Class**

All individuals in the United States who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

110. Excluded from the Class are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

111. Plaintiff reserves the right to modify or amend the definitions of the proposed Nationwide Class, as well add subclasses, before the Court determines whether certification is appropriate.

112. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

113. <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of 181,543 90 Degree Benefits customers whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through 90 Degree Benefits' records, Class Members' records, publication notice, self-identification, and other means.

114. <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.  Whether 90 Degree Benefits engaged in the conduct alleged herein;

    b.  When 90 Degree Benefits learned of the Data Breach;

    c.  Whether 90 Degree Benefits' response to the Data Breach was adequate;

26

d. Whether 90 Degree Benefits unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

e. Whether 90 Degree Benefits failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f. Whether 90 Degree Benefits' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether 90 Degree Benefits' data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether 90 Degree Benefits owed a duty to Class Members to safeguard their Private Information;

i. Whether 90 Degree Benefits breached its duty to Class Members to safeguard their Private Information;

j. Whether hackers obtained Class Members' Private Information via the Data Breach;

k. Whether 90 Degree Benefits had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

l. Whether 90 Degree Benefits breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

m. Whether 90 Degree Benefits knew or should have known that its data security systems and monitoring processes were deficient;

n. What damages Plaintiff and Class Members suffered as a result of 90 Degree Benefits' misconduct;

27

o. Whether 90 Degree Benefits' conduct was negligent;

p. Whether 90 Degree Benefits' conduct was *per se* negligent;

q. Whether 90 Degree Benefits was unjustly enriched;

r. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

s. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

t. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

115. <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

116. <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

117. <u>Predominance</u>. 90 Degree Benefits has engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from 90 Degree Benefits' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

28

118.    Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for 90 Degree Benefits. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

119.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). 90 Degree Benefits has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

120.    Finally, all members of the proposed Class are readily ascertainable. 90 Degree Benefits has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by 90 Degree Benefits.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Nationwide Class )

121.    Plaintiff restate and reallege all of the allegations stated above as if fully set forth herein.

29

122. 90 Degree Benefits knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

123. 90 Degree Benefits' duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

124. 90 Degree Benefits knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. 90 Degree Benefits was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

125. 90 Degree Benefits owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. 90 Degree Benefits' duties included, but were not limited to, the following:

    a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b. To protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

    d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to HIPAA and the FTCA;

e.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f.  To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

126.  90 Degree Benefits' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

127.  90 Degree Benefits' duty to protect its customers' confidential PII and PHI also arose pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq.* and industry standards.

128.  Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and 90 Degree Benefits owed them a duty of care to not subject them to an unreasonable risk of harm.

129.  90 Degree Benefits, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within 90 Degree Benefits' possession.

130.  90 Degree Benefits, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

31

131.    90 Degree Benefits, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

132.    90 Degree Benefits breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

    a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.   Failing to adequately monitor the security of its networks and systems;

    c.   Failing to periodically ensure that its email system maintained reasonable data security safeguards;

    d.   Allowing unauthorized access to Class Members' Private Information;

    e.   Failing to comply with HIPAA;

    f.   Failing to comply with the FTCA;

    g.   Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

    h.   Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

133.    90 Degree Benefits acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

32

134. 90 Degree Benefits had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust 90 Degree Benefits with their Private Information was predicated on the understanding that 90 Degree Benefits would take adequate security precautions. Moreover, only 90 Degree Benefits had the ability to protect its systems (and the Private Information that it stored on them) from attack.

135. 90 Degree Benefits' breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised and exfiltrated, as alleged herein.

136. As a result of 90 Degree Benefits' ongoing failure to notify Plaintiff and Class Members regarding exactly what Private Information has been compromised, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

137. 90 Degree Benefits' breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

138. As a result of 90 Degree Benefits' negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

139. 90 Degree Benefits also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

140. As a direct and proximate result of 90 Degree Benefits' negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

141. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

142. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

143. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring 90 Degree Benefits to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
## (On behalf of Plaintiff and the Nationwide Class

144. Plaintiff restate and reallege the allegations in paragraphs 1-120 as if fully set forth herein.

145. Pursuant to Section 5 of the FTCA, 90 Degree Benefits had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

146. Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq.*, 90 Degree Benefits had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Private Information.

147. Specifically, pursuant to HIPAA, Defendants had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of

34

assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

148.    90 Degree Benefits breached its duties to Plaintiffs and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

149.    Specifically, 90 Degree Benefits breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to: proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

150.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII and PHI (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above and the industry-standard cybersecurity measures also set forth above form part of the basis of 90 Degree Benefits' duty in this regard.

151.    90 Degree Benefits also violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

152.    It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiffs' and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to 90 Degree Benefits' networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information.

153. Plaintiff and Class Members are within the class of persons that the FTCA and HIPAA are intended to protect and 90 Degree Benefits' failure to comply with both constitutes negligence *per se*.

154. Plaintiff's and Class Members' Private Information constitutes personal property that was stolen due to 90 Degree Benefits' negligence, resulting in harm, injury, and damages to Plaintiffs and Class Members.

155. As a direct and proximate result of 90 Degree Benefits' negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the actual misuse of their Private Information and the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

156. As a direct and proximate result of 90 Degree Benefits' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

157. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring 90 Degree Benefits to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT III**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

158. Plaintiff restate and reallege the allegations in paragraphs 1-120 as if fully set forth herein.

159. Plaintiff and Class Members entered into a valid and enforceable contract through which turned over their valuable Private Information in exchange for services. That contract

36

included promises by Defendants to secure, safeguard, and not disclose Plaintiff's and Class Members' Private Information.

160.    90 Degree Benefits' Privacy Policy and HIPAA Privacy Notice memorialized the rights and obligations of 90 Degree Benefits and its customers. These documents were provided to Plaintiff and Class Members in a manner in which they became part of the agreement for services.

161.    In both the Privacy Policy and the HIPAA Privacy Notice, 90 Degree Benefits commits to protecting the privacy and security of Plaintiff's and Class Members' Private Information and promises to never share Plaintiff's and Class Members' Private Information except under certain limited circumstances.

162.    Plaintiff and Class Members fully performed their obligations under their contracts with 90 Degree Benefits.

163.    However, 90 Degree Benefits did not secure, safeguard, and/or keep private Plaintiff's and Class Members' Private Information, and therefore 90 Degree Benefits breached its contracts with Plaintiff and Class Members.

164.    90 Degree Benefits allowed third parties to access, copy, and/or exfiltrate Plaintiff's and Class Members' Private Information without permission. Therefore, 90 Degree Benefits breached the Privacy Policy with Plaintiff and Class Members.

165.    90 Degree Benefits' failure to satisfy its confidentiality and privacy obligations resulted in 90 Degree Benefits providing services to Plaintiff and Class Members that were of a diminished value.

166.    As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein, including in Defendants' failure to fully perform their part of the bargain with Plaintiff and Class Members.

167.    As a direct and proximate result of 90 Degree Benefits' conduct, Plaintiff and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

168.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring 90 Degree Benefits to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

169.    Plaintiff restate and reallege the allegations in paragraphs 1-120 as if fully set forth herein.

170.    This Count is pleaded in the alternative to Count III above.

171.    90 Degree Benefits provided health insurance services to Plaintiff and Class Members. Plaintiff and Class Members formed an implied contract with Defendants regarding the provision of those services through their collective conduct, including by Plaintiff and Class Members entrusting their Private Information to Defendants' care in exchange for these services.

172.    Through Defendants' offering of services, it knew or should have known that it must protect Plaintiff's and Class Members' confidential Private Information in accordance with 90 Degree Benefits' policies, practices, and applicable law.

173.    As consideration, Plaintiff and Class Members turned over valuable (and monetizable) Private Information to 90 Degree Benefits in exchange for 90 Degrees Benefits'

38

safekeeping of such Information. Accordingly, Plaintiff and Class Members bargained with 90 Degree Benefits to securely maintain and store their Private Information.

174. 90 Degree Benefits accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

175. In delivering their Private Information to 90 Degree Benefits, Plaintiff and Class Members intended and understood that 90 Degree Benefits would adequately safeguard the Private Information as part of the health insurance services offered.

176. Defendants' implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (7) taking other steps to protect against foreseeable data breaches.

177. Plaintiff and Class Members would not have entrusted their Private Information to 90 Degree Benefits in the absence of such an implied contract.

178. Had 90 Degree Benefits disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices in place that were sufficient to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to 90 Degree Benefits.

179. 90 Degree Benefits recognized that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of its bargain with Plaintiff and the Class.

180. 90 Degree Benefits violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Private Information.

181. Plaintiff and Class Members have been damaged by 90 Degree Benefits' conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

<u>**COUNT V**</u>
<u>**INVASION OF PRIVACY**</u>
<u>**(On Behalf of Plaintiff and the Nationwide Class)**</u>

182. Plaintiff restates and realleges the allegations in paragraphs 1-120 as if fully set forth herein.

183. Plaintiff and Class Members maintain a privacy interest in their Private Information, which is private, confidential information that is also protected from disclosure by applicable laws set forth above.

184. Plaintiff and Class Members' Private Information was contained, stored, and managed electronically in 90 Degree Benefits' records, computers, and databases that was intended to be secured from unauthorized access to third-parties because highly sensitive, confidential matters regarding Plaintiff's and Class Members' identities were only shared with 90 Degree Benefits for the limited purpose of obtaining Defendants' services.

185. Additionally, Plaintiff's and Class Members' Private Information is highly attractive to criminals who can nefariously use such Private Information for fraud, identity theft, and other crimes without the victims' knowledge and consent.

40

186.    90 Degree Benefits' disclosure of Plaintiff's and Class Members' Private Information to unauthorized third parties as a result of its failure to adequately secure and safeguard their Private Information is offensive. 90 Degree Benefits' disclosure of Plaintiff's and Class Members' Private Information to unauthorized third parties permitted the physical and electronic intrusion into private quarters where Plaintiff's and Class Members' Private Information was stored.

187.    Plaintiff and Class Members have been damaged by 90 Degree Benefits' conduct, including by incurring the harms and injuries arising from the Data Breach now and in the future.

## COUNT VI
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

188.    Plaintiff restate and reallege the allegations in paragraphs 1-120 as if fully set forth herein.

189.    This Count is pleaded in the alternative to Counts III and IV above.

190.    Plaintiff and Class Members conferred a benefit on 90 Degree Benefits by turning over their Private Information to Defendants in exchange for services that should have included cybersecurity protection to protect their Private Information. Plaintiff and Class Members did not receive such protection.

191.    90 Degree Benefits has retained the benefits of its unlawful conduct, including the value received from possessing Plaintiff's and Class Members' Private Information and utilizing it for business purposes in order to make profits, which profits should have been used for adequate cybersecurity practices that it failed to provide.

192.    90 Degree Benefits knew that Plaintiff and Class Members conferred a benefit upon it, which 90 Degree Benefits accepted. 90 Degree Benefits profited from these transactions and

41

used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff's and Class Members' Private Information and prevented the Data Breach.

193.    If Plaintiff and Class Members had known that 90 Degree Benefits had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

194.    Due to 90 Degree Benefits' conduct alleged herein, it would be unjust and inequitable under the circumstances for 90 Degree Benefits to be permitted to retain the benefit of its wrongful conduct.

195.    As a direct and proximate result of 90 Degree Benefits' conduct, Plaintiff and Class Members have suffered and/or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, including medical identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in 90 Degree Benefits' possession and is subject to further unauthorized disclosures so long as 90 Degree Benefits fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the

impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

196.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from 90 Degree Benefits and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by 90 Degree Benefits from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

197.    Plaintiff and Class Members may not have an adequate remedy at law against 90 Degree Benefits, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT VII**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

198.    Plaintiff restates and realleges the allegations in paragraphs 1-120  as if fully set forth herein.

199.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal laws and regulations, as well as well-established industry standards, described in this Complaint.

200.    90 Degree Benefits owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff's and Class Members' Private Information.

201.    90 Degree Benefits still possesses Private Information regarding Plaintiff and Class Members.

43

202.     Plaintiff alleges that 90 Degree Benefits' data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her Private Information and the risk remains that further compromises of her Private Information will occur in the future.

203.     Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.   90 Degree Benefits owes a legal duty to secure its customers' Private Information and to timely notify customers of a data breach under the common law, HIPAA, and the FTCA;

    b.   90 Degree Benefits' existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect customers' Private Information; and

    c.   90 Degree Benefits continues to breach this legal duty by failing to employ reasonable measures to secure customers' Private Information.

204.     This Court should also issue corresponding prospective injunctive relief requiring 90 Degree Benefits to employ adequate security protocols consistent with legal and industry standards to protect customers' Private Information, including the following:

    a.   Order 90 Degree Benefits to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

    b.   Order that, to comply with Defendants' explicit or implicit contractual obligations and duties of care, 90 Degree Benefits must implement and maintain reasonable security measures, including, but not limited to:

i.      engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on 90 Degree Benefits' systems on a periodic basis, and ordering 90 Degree Benefits to promptly correct any problems or issues detected by such third-party security auditors;

ii.     engaging third-party security auditors and internal personnel to run automated security monitoring;

iii.    auditing, testing, and training its security personnel regarding any new or modified procedures;

iv.     segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of 90 Degree Benefits' systems;

v.      conducting regular database scanning and security checks;

vi.     routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii.    meaningfully educating its users about the threats they face with regard to the security of their Private Information, as well as the steps 90 Degree Benefits' customers should take to protect themselves.

205.    If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at 90 Degree Benefits. The risk of another such breach is real, immediate, and substantial, especially in light of 90 Degree Benefits recent

history of data breaches. If another breach at 90 Degree Benefits occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

206.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to 90 Degree Benefits if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of 90 Degree Benefits' compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and 90 Degree Benefits has a pre-existing legal obligation to employ such measures.

207.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at 90 Degree Benefits, thus preventing future injury to Plaintiff and other customers whose Private Information would be further compromised.

## VII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a.  An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Nationwide Class requested herein;

b.  Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

46

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order instructing 90 Degree Benefits to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e.  An order requiring 90 Degree Benefits to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED:  May 3, 2023                                        Respectfully submitted,

*/s/ Mason A. Barney*
Mason A. Barney
Tyler J. Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com

47